## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HAROLD R. BERK, et al.,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Civ. No. 19-4629** |
| | : | |
| **EQUIFAX, INC., et al.** | : | |
| **Defendant.** | : | |
| | : | |

Diamond, J.                    <u>**MEMORANDUM**</u>                    February 21, 2020

  Representing himself and his wife, attorney Harold Berk alleges that Equifax and related entities violated federal and state privacy laws. (Compl., Doc. No. 1.) Defendants move to dismiss for lack of personal jurisdiction, or in the alternative, ask me to transfer to the Northern District of Georgia. (Defs.' Mot., Doc. No. 3); Fed. R. Civ. P. 12(b)(2); <u>see</u> 28 U.S.C. § 1404(a). Controlling Third Circuit authority—now called into question by a more recent Supreme Court holding—compels me to deny Defendants' Motion to Dismiss. I will, however, grant their Motion to Transfer.

## I.  FACTUAL ALLEGATIONS

  Plaintiffs are citizens of Florida and residents of Delaware; they own property in Port St. Lucie, Florida and Lewes, Delaware. (Compl. ¶ 2.) Berk's law office is in Radnor, Pennsylvania. (<u>Id.</u> ¶ 2.) Defendant Equifax Inc. is a Georgia corporation with its principal place of business in Atlanta. (<u>Id.</u> ¶ 3.) Defendant Equifax Information Services is a Georgia limited liability company with its principal place of business in Atlanta. (<u>Id.</u> ¶ 4.) Defendants are registered to do business in Pennsylvania and share a "registered office" in Dauphin County. (<u>Id.</u> ¶ 3–4.) Plaintiffs allege that Equifax Mortgage Information Systems is a Georgia corporation or LLC with a principal place of business in New Jersey. (<u>Id.</u> ¶ 5.) Defendants note that EMIS is not a juridical entity. (Defs.' Mot. ¶ 6.)

Plaintiffs' claims arise from many unbidden telephone calls they received in late August 2019 at their Florida home from mortgage lenders and brokers. (Compl. ¶ 15.) Earlier that month, Plaintiffs had begun refinancing the mortgage on their Delaware property. (Id. ¶ 10.) Although they were not refinancing their Florida mortgage, Plaintiffs nonetheless received some forty-five calls from brokers and lenders with refinance offers. (Id. ¶ 17.) The callers were from Florida and other states. (Id. ¶ 15.) Plaintiffs do not allege that any Pennsylvania lenders contacted them.

Defendants sell the personal and financial information they obtain in conducting credit checks. (Id. ¶¶ 36–41.) It is thus alleged that Defendants caused the "onslaught" of calls because they informed the lenders of the refinancing of Plaintiffs' Delaware property. (Id. ¶ 18, 41.) Plaintiffs further allege that EMIS obtained their credit reports without any request by or notice to them (although they acknowledge that their lender obtained their credit reports in connection with their Delaware refinancing). (Id. ¶¶ 28–31.)

## II.    PROCEDURAL HISTORY

Plaintiffs accuse Defendants of willfully and negligently violating the Fair Credit Reporting Act, as well as committing Pennsylvania, Georgia, Florida, and Delaware privacy torts. See 15 U.S.C. § 1681. In opposing Defendants' Motion, Plaintiffs sought limited jurisdictional discovery. (Doc. No. 10.) I denied both that request (because they had yet to "establish a colorable or prima facie showing of personal jurisdiction") and their request for reconsideration. (Order, Doc. No. 11 (quoting Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 946 (7th Cir. 2000)); Order, Doc. No. 13.) The instant dismissal and transfer Motion has been fully briefed. (Doc. Nos. 3, 14.)

## III.   LEGAL STANDARDS

The law governing transfer is settled; the law governing jurisdiction is not. I will first

address the threshold question of jurisdiction.

## A. Jurisdiction

Although Plaintiffs have "the burden of demonstrating the facts that establish personal jurisdiction," I must accept their "allegations as true and construe disputed facts" in their favor. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 1992) (internal citation omitted) (quoting Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). "[P]laintiff[s] need only establish a prima facie case of personal jurisdiction," which they may satisfy by submitting affidavits or other competent evidence. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007) (second alteration in original) (quoting Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004)); Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009).

I may exercise jurisdiction over nonresident Defendants "to the extent" Pennsylvania law allows. Colvin v. Van Wormer Resorts, Inc., 417 F. App'x 183, 186 (3d Cir. 2011). The Commonwealth's long-arm statute authorizes Pennsylvania courts to exercise jurisdiction "to the fullest extent allowed under the Constitution of the United States." 42 Pa. C.S. § 5322(a). Pennsylvania law thus provides jurisdiction over nonresidents that: (1) are incorporated under Pennsylvania law; (2) consent to jurisdiction; or (3) carry on "a continuous and systematic part of" their general business in Pennsylvania. Id. § 5322(a)(2). The exercise of personal jurisdiction over a nonresident defendant comports with the Constitution when that defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

There are two distinct types of personal jurisdiction: specific and general. Specific

jurisdiction usually arises from <u>International Shoe</u>'s "minimum contacts": it is case specific, based on "an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." <u>Goodyear Dunlop Tires Ops., S.A. v. Brown</u>, 564 U.S. 915, 919 (2011) (internal quotation marks and citation omitted); <u>see</u> <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 & nn. 8–9 (1984) ("When a controversy is related to or 'arises out of' a defendant's contacts with the forum, the Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of *in personam* jurisdiction.'") (quoting <u>Schaffer v. Heitner</u>, 433 U.S. 186, 204 (1977)).

In contrast, general jurisdiction exists where a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." <u>Goodyear</u>, 564 U.S. at 919.  General jurisdiction applies where a business: (1) is incorporated; (2) has its principal place of business; or (3), in "exceptional cases," where its activities are "so substantial and of such a nature as to render [it] at home in" the forum.  <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 139 n.19 (2014).

### B.     Transfer

I have discretion to transfer suit to a district in which "it might have been brought" when doing so would serve "the convenience of parties and witnesses [and] the interest of justice."  28 U.S.C. § 1404.  Although a "plaintiff's choice of venue should not be lightly disturbed," I must "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 879 (3d Cir. 1995) (internal quotation marks and citation omitted); <u>see</u> 15 Wright & Miller, <u>Federal Practice and Procedure</u> § 3854 (4th ed. 2019).

Among the relevant factors are:

> (1) the convenience and preference of the parties, including plaintiff's choice of forum; (2) the convenience of witnesses; (3) access to sources of proof such as books and records; (4) practical considerations that make litigation easy, expeditious or inexpensive; (5) the relative calendar congestion of the two competing districts; (6) where the events at issue took place and the interest of the respective courts in deciding local controversies; (7) the enforceability of any judgment and (8) the familiarity of the trial judge with the applicable law.

Weber v. Basic Comfort Inc., 155 F. Supp. 2d 283, 285 (E.D. Pa. 2001) (citing Jumara, 55 F.3d at 879–80). The first four are "private interest" factors, and the last four are "public interest" factors. See id.; see also Jumara, 55 F.3d at 879–80.

## IV.    DISCUSSION

### A.    Jurisdiction

Personal jurisdiction is "an essential element . . . , without which the court is 'powerless to proceed to an adjudication.'" Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) (quoting Emp'rs Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937)). Plaintiffs contend that there is general personal jurisdiction over Defendants because they have registered to conduct business in Pennsylvania. This position builds on two state statutes and a Third Circuit opinion that together broadly confer on Pennsylvania courts general jurisdiction over all businesses registered in the Commonwealth.

A foreign corporation "may not do business in [the] Commonwealth until it registers" to do so. 15 Pa.C.S. § 411(a). That registration "constitute[s] a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such" businesses, which, by registering, are deemed to have consented to Pennsylvania jurisdiction. 42 Pa.C.S. § 5301(a)(2)(ii). The Third Circuit so held some thirty years ago. See Bane v. Netlink, Inc., 925 F.2d 637, 640 (3d Cir. 1991).

Whether Bane's expansive approach to general jurisdiction remains good law is by no means clear.  In Daimler, the Supreme Court rejected the "unacceptably grasping" formulation that corporations are subject to general jurisdiction everywhere they "engage[ ] in a  substantial, continuous, and systematic course of business."  571 U.S. at 138.  Basing general jurisdiction on traditional minimum-contacts analysis can result in "exorbitant exercises of all-purposes jurisdiction [that] would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'"  Id. at 139 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).  The Supreme Court thus held that general jurisdiction is reserved for those rare instances when the nonresident defendant is "essentially at home in the forum State."   Id. (quoting Goodyear, 564 U.S. at 919).

The continuing vitality of consent-by-registration jurisdiction is thus doubtful.  Daimler's unmistakable import is that a permissible conferral of general jurisdiction must hew closely to its "paradigm" bases: "place of incorporation and principal place of business"—i.e. where the entity is "at home."  Id. at 137 (internal quotation marks and alteration omitted) ("[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there.").  This is at odds with Bane's conferral of general jurisdiction over any entity that routinely registers with the Commonwealth.  Indeed, my colleague Judge Robreno has recently ruled that consent-by-registration general jurisdiction violates the due process limits Daimler sets forth.  See Sullivan v. A.W. Chesterton, Inc., 384 F. Supp. 3d 532, 543–45 (E.D. Pa. 2019) ("[T]he result obtained under Bane (general personal jurisdiction over a foreign corporation by statutory consent) cannot stand under the new constitutional standard adopted in Daimler (general personal jurisdiction only where the foreign corporation is at home).");  see Genuine Parts Co. v. Cepec, 137 A.3d 123, 143 (Del.

2016) (invalidating Delaware's erstwhile consent-by-registration general jurisdiction as "fundamentally undermined by Daimler").  I agree with Judge Robreno that the "consent" compelled by Pennsylvania's registration scheme, however explicit it may be, would effectively "approve the exercise of general jurisdiction in every State in which a corporation engages in" *any* business—an impermissibly broader formulation than that the Supreme Court has condemned. Daimler, 571 U.S. at 138; Genuine Parts, 137 A.3d at 143 ("[E]xacting such a disproportionate toll on commerce is itself constitutionally problematic."). Other members of this Court disagree and continue to apply Bane.  See, e.g., Williams v. Takeda Pharm. Am., Inc., 2019 WL 2615947, at *3 & n.4 (E.D. Pa. June 26, 2019) (collecting cases).

Although Judge Robreno's analysis is plainly correct, in the circumstances presented, I will err on the side of caution and follow Bane, which remains the law of this Circuit.

Plaintiffs have provided the Pennsylvania registrations authorizing Defendants to do business in the Commonwealth.  (Exs. E & M to Plaintiffs' Opp'n, Doc. No. 14.)  They have thus made a sufficient showing under Bane that this Court has general jurisdiction over Defendants. Accordingly, I will follow Bane and deny the Motion to Dismiss.  See 925 F.2d at 640.

**B.**     **Transfer**

I will grant Defendants' Motion to Transfer.  The Parties agree that this matter could properly have been brought in the Northern District of Georgia.  See 28 U.S.C. § 1404(a). Applying the Jumara factors, it is apparent that transfer to Georgia is appropriate.

***Plaintiffs' Choice of Forum and the Parties' Convenience***

The deference usually afforded a plaintiff's choice of forum diminishes when he sues in a forum other than his state of residence.  See Weber, 155 F. Supp. 2d at 285.  Plaintiffs are residents of Delaware and Florida, and allege injuries suffered in their Florida home.  In opposing transfer,

they urge that it would be inconvenient for them "to travel to Georgia" from Florida or Delaware, even though they did not bring suit in either state. Rather, they proceeded in this District because Plaintiff Berk maintains his law practice here. Yet, the relevant documents and witnesses are located in the Northern District of Georgia, where Defendants are headquartered. It would thus be vastly more convenient for Defendants to litigate in Georgia, although their preference is "entitled to considerably less weight than" Plaintiffs'. Smith v. HireRight Solutions, Inc., 2010 WL 2270541, at *4 (E.D. Pa. June 7, 2010) (quoting EVCO Tech. & Dev. Co. v. Precision Shooting Equip., Inc., 379 F. Supp. 2d 728, 730 (E.D. Pa. 2003)).

In these circumstances, this factor weighs slightly in favor of transfer.

### *Convenience of Witnesses*

The "convenience of witnesses" is "perhaps the most important factor." Headon v. Colo. Boys Ranch, 2005 WL 1126962, at *7 (E.D. Pa. May 5, 2005) (Citing 15 Wright & Miller, Federal Practice and Procedure § 3851 (2d ed. 1986)). Defendants have shown without contradiction that almost all witnesses are in Georgia. (See Gobin Decl., Ex. A to Defs.' Mot., ¶¶ 16–21.) Those competent to testify about Defendants' business practices and their actions and records respecting Plaintiffs work at Defendants' Atlanta headquarters. In response, Plaintiffs identify a single lender (of some forty-five callers) who indicated he may have received information about Plaintiffs from Defendants' New Jersey-based affiliate.

Because proceeding in Georgia is significantly more convenient for virtually all the witnesses, this factor weighs strongly in favor of transfer.

### *Location of Evidence*

Although technology has reduced the significance of this factor, I must consider whether the location of the evidence weighs in favor of transfer. Smith, 2010 WL 2270541, at *8. Plainly,

it does. Once again, Defendants' credit files are maintained in Atlanta, as are documents related to the business practices Plaintiffs challenge. In response, Plaintiffs speculate that there may be some relevant documents in New Jersey.

This factor also weighs strongly in favor of transfer.

### Court Congestion

Although the Parties have not addressed it, the Administrative Office's published statistics show that the Northern District of Georgia's docket is heavier than that of this District. See Administrative Office of the U.S. Courts, United States District Courts—National Judicial Caseload Profile (Sept. 30, 2019), https://www.uscourts.gov/sites/default/files/data_tables/ fcms_na_distprofile0930.2019.pdf. As I discuss below, none of the "material events" giving rise to this suit occurred in this District, but in Atlanta. Any "local interest" relating to this dispute is thus in the Northern District of Georgia, not here. See Manley v. Navmar Applied Sciences Corp., 2012 WL 5588757, at *3 (E.D. Pa. Nov. 14, 2012).

This factor is neutral. See General Refractories Co. v. Wash. Mills Electro Minerals Corp., 1995 WL 361164 (E.D. Pa. June 16, 1995) ("Although the relative congestion of court dockets may be evaluated in a motion to transfer, it generally is not a factor worthy of great weight."). But see UNR Industries, Inc. v. Ins. Co. of N. Am., 1992 WL 309615, at *4 (N.D. Ill. Oct. 19 1992) (ignoring the factor altogether where neither party offered relevant information).

### Where the Events Occurred

"Typically the most appropriate venue is where a majority of events giving rise to the claim arose." In re Amkor Tech., Inc. Sec. Litig., 2006 WL 3857488, at *5 (E.D. Pa. Dec. 28, 2006). This consideration outweighs the plaintiff's choice if he files suit in a forum remote from the underlying events and evidence. See InfoMC, Inc. v. Comprehensive Behavioral Care, Inc., 2012

WL 1114360, at *13 (E.D. Pa. Mar. 30, 2012); <u>Headon</u>, 2005 WL 1126962, at *5. In FCRA cases, the "material events" occur "where the defendant credit reporting agency conducted its business": i.e. compiled and issued credit reports. <u>Smith</u>, 2010 WL 2270541, at *4. Defendants conduct their business in Atlanta. Remarkably, other than Berk practicing law here—surely not a material event—the Complaint includes no mention of any event occurring here.

This factor thus weighs strongly in favor of transfer.

### *Public Interest*

To the extent the private interests I have discussed promote the public's interest in efficient litigation, that also counsels in favor of transfer. There is nothing efficient about proceedings in this District concerning the actions of Georgia businesses, taken entirely in Georgia, and affecting individuals in Florida. Proceeding in the Northern District of Georgia would obviously enhance efficiency.

This factor also weighs in favor of transfer.

### V. CONCLSION

In sum, I will (with misgivings) deny Defendants' Motion to Dismiss. Because the <u>Jumara</u> factors weigh in favor of transfer, I will grant Defendants' Motion to Transfer.

An appropriate Order follows.

*/s/ Paul S. Diamond*
_____
Paul S. Diamond, J.